## COATES v. FIRST NAT. BANK & TRUST CO. et al.

No. 26170.   Jan. 28. 1936.

Rehearing Denied March 17, 1936.

Embry, Johnson, Crowe & Tolbert and McLaury & Hopps, for plaintiff in error.

Abernathy & Howell, for defendant in error.

RILEY, J. W. J. Wallace and A. E. King commenced this action against plaintiff in error, J. S. Coates, in the district court of Oklahoma county to recover judgment upon two promissory notes of $10,000 each. Trial was had to a jury, resulting in a verdict and judgment in favor of plaintiffs for the full amount sued for. After the trial. W. J. Wallace died, and the cause was revived in the name of the First National Bank & Trust Company, a corporation, and Elouise B. Wallace, executor of the estate of W. J. Wallace. Herein the parties will be referred to as in the trial court.

The petition is in the usual form with copies of the notes attached.

Defendant answered alleging that the notes sued upon were executed without any valid, legal, or valuable consideration. Reply by general denial was filed. Defendant thereafter filed an amendment to the answer alleging, in substance. that the only consideration for said notes was an agreement entered into between the parties whereby plaintiffs agreed to secure the passage of an ordinance by the city council of Oklahoma City in which defendant was personally interested, and said notes were to be paid only in the event that plaintiffs were successful in securing the passage of said ordinance. and that said agreement was illegal, void, and against public policy.

Plaintiffs then filed a reply to the answer as amended in which they specifically denied that the consideration for said notes was as alleged by defendant, and affirmatively alleged that the notes were executed for a good, valid, and legal consideration, to wit, a settlement and compromise of a claim for damages which plaintiffs had against defendant, and the forbearance of a. suit on said claim.

Thereupon defendant filed an amended answer in which he admitted the execution and delivery of said notes, but alleged that said notes were given without any valuable consideration. and again alleged that the only consideration therefor was for alleged services in connection with an oral agreement on the part of plaintiff to assist in securing the passage of an ordinance by the city council of Oklahoma City extending the oil drilling zone in said city known as the U-7 drilling zone so as to include certain properties covered by an oil and gas lease in which defendant was interested; that said ordinance was passed and that plaintiffs demanded payment for said illegal services, and that the notes were executed and delivered in accordance with said agreement, and that the agreement was illegal and contrary to public policy, and alleging further:

"Defendant, further answering herein and especially in answer to the amended reply of plaintiffs filed herein, expressly denies

that the same were executed and delivered in settlement and compromise of any claim for damages held by plaintiffs against answering defendant or that the same were given as a consideration of a promise and agreement to forbear the prosecution of suit thereon. In this connection, and in the alternative, defendant further alleges that if said alleged settlement and compromise was orally agreed upon by defendant with the plaintiffs, the same is of no binding force and effect and formed no valid consideration for the notes sued on for the reason that the same was predicated or based upon mutual mistake of fact on the part of both plaintiffs and the defendant that such a claim for damages actually existed, and for the further reason that the same was procured through fraud and deceit in that plaintiffs concealed material facts which were well known to the plaintiffs, but unknown to the defendant, and that plaintiffs fraudulently misled defendant therein and said facts not being within the equal knowledge and equal means of knowledge of defendant, and that said mutual mistake and fraud, misrepresentation, and concealment of the true facts surrounding said alleged claim for damages were not discovered by the defendant until sometime after the execution and delivery of said notes."

To this amended answer plaintiffs replied denying the allegations as to the alleged agreement concerning the passage of the ordinance by Oklahoma City, and again affirmatively alleging that the true consideration for said notes was the settlement and compromise of a claim for damages which plaintiff had against defendant growing out of a mistake made in an abstract of title which defendant made dated August 2, 1928, covering certain land which was purchased by plaintiffs.

That plaintiffs had three years after August 2, 1928, to sue upon said claim for damages, but that defendant had admitted liability and had given said notes in settlement of said claim and held out the promise to plaintiffs that he would pay said notes until after the statute of limitations had run on said claim, and that defendant had falsely and fraudulently induced plaintiffs to believe that he would pay said notes, and induced plaintiffs not to bring suit on said claim for damages until after the statute of limitations had run on the claim itself.

At the trial defendant assumed the burden and presented evidence tending to establish his claim that the only consideration for said notes was the alleged agreement concerning the passage of said ordinance by the city council of Oklahoma City. Defendant testified in his own behalf and explained that for sometime before February, 1931, he was interested in oil and gas leases covering land in Oklahoma City north of the Chicago, Rock Island & Pacific Railroad and south of Third street in the east part of Oklahoma City, known as the Phillips and Mead East-Side addition, and intimated that he could have sold his interest therein for something like $1,000,000, if he could have had said land included within the drilling zone in the city. That in October, 1930, while said proposition was pending, Wallace and King represented that they or one of them had or could exercise influence over certain councilmen to induce them to favor said ordinance; that he agreed to reward them for such services as they might render in the matter, and that they or one of them subsequently informed defendant that the two councilmen referred to were "all right" on the ordinance. That before the land was admitted into the zone they agreed upon a consideration of $20,000 to be paid to plaintiffs for services in said matter. That the ordinance was passed January 12, 1931, and thereafter plaintiffs made claim upon defendant for payment, and that finally on March 24, 1931, said notes were executed and delivered in payment for said alleged services.

He testified in part:

"Q. What, then, was the consideration for which you executed and delivered these two notes to W. J. Wallace and Arthur E. King? A. Services rendered in getting that U Zone extended, that lease into the U Zone. Q. After the ordinance passed, January 12, 1931, and up to the date of the signing of these notes, between those dates, did Wallace or King either one make any further claim or demand upon you by reason of the alleged error in the abstract back in 1928? A. No, sir. Q. Were these notes executed and delivered for and in settlement of that claim in any way? A. No, sir. Q. Did W. J. Wallace or Arthur E. King execute and deliver to you for the Coates Abstract Company, or for yourself, any receipt or release by reason of the alleged error in the abstract at the time these notes were executed, or any time prior thereto? A. No, sir."

On cross-examination he admitted that sometime about April, 1930, he received a letter from attorneys for plaintiffs, stating in effect that King and Wallace had purchased 240 acres of land in Oklahoma county, and that in making the purchase they had relied upon an abstract compiled by defendant August 2, 1928; that the oil and gas

lease shown in said abstract from Sarah Taylor and L. Taylor was dated and shown in the abstract to run five years from the date thereof, when in fact it ran ten years. which materially lessened the value of the land.

He also admitted that thereafter King and Wallace made the claim that by reason of the mistake in said abstract, they figured they had lost about $100 per acre, or a total of $24,000. He insisted, however, that the claim did not enter into the transaction concerning the notes.

Plaintiffs both testified in substance that the notes were given in compromise of the claim growing out of the mistake in the abstract; they told in detail the nature of the transaction whereunder they bought the land relying upon an abstract of title prepared by defendant; that the abstract of title showed an oil and gas lease covering 240 acres of the land running for five years from the date of the lease, December 1, 1926; that in fact the lease ran for a period of ten years, and as long thereafter as oil and gas should be produced from said premises.

They both denied the agreement about assisting in procuring the passage of the ordinance extending the U-7 drilling zone, and denied that said matter had anything whatever to do with the notes.

Plaintiff King admitted, however, that during the time said matter was pending before the city council he had occasion to meet one of the councilmen, not either one of the two mentioned by defendant, however, in a business deal of a different character, and during the course of the conversation he did mention the pending ordinance, and took the said member of the council out to look over the land, and that he told said councilman that Coates owed him a lot of money and was interested in getting the zone extended, and if he could get the land into the drilling zone, it would help him greatly in making the collection.

It developed that plaintiffs had bought the 240 acres from Lee and Sarah Taylor, husband and wife, and in the same deal they bought 80 acres in the same half section from Kie Taylor, son of Lee and Sarah.

In rebuttal Lee Taylor was sworn as a witness, and testified in substance that a day or two before the sale of the land was completed he told King and Wallace that the oil and gas lease on the 240 acres was a ten-year lease. Kie Taylor was called as a witness for defendant, and was asked certain questions concerning the same matter, that is, as to whether or not he had told plaintiffs or either of them that the lease ran for ten years. This was objected to and said witness was not permitted to testify, whereupon proffer was made as to what his evidence would be. It was denied. The same offer was made as to Mrs. Sarah Taylor, and her evidence on that question was rejected. Thereupon, on motion of plaintiffs, the testimony of Lee Taylor was stricken.

Exceptions were saved to the ruling, and this is the principal point urged as error. The other point urged is that defendant offered to prove, and was denied the right, that the abstract, when made, correctly stated the length of the time of the lease as shown by the record in the office of the county clerk at that time, which was error, and that the record had subsequently been changed so as to correct the error.

The court refused to submit the question of whether plaintiffs had actual knowledge as to the length of the term of the oil and gas lease to the jury.

The trial court in rejecting the testimony of the witness Kie Taylor, concerning what he had said to plaintiffs relative to the length of the term of the oil and gas lease, stated:

"The Court: The burden in this case is on the defendant Coates to establish. by a fair preponderance of the evidence that the consideration for the execution of these notes was the services of these two men in procuring the passage of an ordinance admitting certain properties to the U-7 zone. That is the first the court hears about this thing, as to what the consideration for the notes was. The plaintiffs respond and say that there was a controversy between themselves and Coates over a certificate in an abstract. Now, Mr. Coates' testimony admits that. Whether there was a liability, or whether a jury or court would have made some other settlement or entered some other judgment or verdict than that agreed upon between Mr. Coates and the plaintiffs in respect to that matter is immaterial. The court will . not go behind that settlement and litigate it."

The contention of defendant is, in effect, that the court overlooked that part of defendant's amended answer quoted above.

The question then arises whether defendant, having pleaded that there was no compromise settlement of the alleged claim for damages and specifically pleaded that the only consideration was the unlawful agreement concerning the enactment of the ordinance, and having positively sworn in his deposition that such were the facts, can be

heard to assert that the alleged compromise settlement and agreement, if entered into,, was entered into under a mistake of fact; that is, that both parties believed at the time a mistake had been made in preparing the abstract, whereas in fact the abstract as made correctly reflected the record as it stood in the office of the county clerk when the abstract was prepared, and also that if the compromise settlement was entered into, defendant was induced to enter into it believing that plaintiffs had in fact relied to their detriment upon the abstract, and particularly that part of it which described the oil and gas lease as running for a period of five years instead of ten, whereas in fact they did not so rely, in that they had actual knowledge from the owners of the land that the lease was in fact one for ten years, and notwithstanding such actual knowledge, bought the land.

The two defenses, as we view the record, are not so inconsistent and contradictory as to prevent defendant relying upon either or both.

It is conceded by all that defendant did not receive any valid consideration for the notes growing out of the alleged agreement and so-called services in connection with the passage of the ordinance.

Plaintiffs must also concede that the only consideration defendant received for the notes, if any, was the alleged compromise and settlement of a claim which plaintiffs assert they had against the defendant growing out of the alleged mistake in the abstract whereby they were misled in the matter of the purchase of the land from the Taylors.

The rule everywhere is that the law favors the compromise and settlement of disputed claims and will sustain such settlements, if fairly made, because it is to the interest of the state that there should be an end to litigation. 12 C. J. 336.

While such agreements are favored by the law, they may be impeached for any cause sufficient to invalidate a contract.

Where a settlement is entered into under a mutual mistake as to a material fact, relief may be had. The mistake must be of and concerning a matter which is material.

In this connection defendant contends that, inasmuch as both parties believed and understood that a mistake had been made in the abstract as to the extent of the term of the oil and gas lease, and believed such mistake to be the fault of defendant, the compromise settlement and agreement, if made, as contended by plaintiffs, but if in fact the abstract correctly reflected the record as made in the office of the county clerk, then both parties must have been mistaken, and the result was a settlement based upon a mutual mistake of fact, and that it was error to reject evidence tending to show that there was no mistake in the abstract when made.

In Beck v. School Dist. No. 2 (Colo.) 131 P. 398, 46 L. R. A. (N. S.) 279, it is said:

"In Page on Contracts, vol. 1, sec. 71, it is said that it is substantially unquestioned that the general rule is that a contract entered into because of mistake as to an essential element is void. Perhaps it is better to say that the general rule is that a contract entered into because of a mistake as to some essential element may be avoided in a proper action."

One of the definitions of a mistake of fact, as that term is defined in section 9422, O. S. 1931, is:

"Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

The right to relief from a contract entered into by mutual mistake as to the existence of a material fact is recognized in Park Add. Co. v. Sawyer, 117 Okla. 141, 245 P. 829, and Lovell v. City of Altus, 118 Okla. 106, 246 P. 468.

Plaintiffs contend, however, that, inasmuch as defendant had the means in hand of ascertaining the facts concerning the condition of the record and neglected to avail himself thereof before the compromise settlement, he cannot have it set aside on account of such mistake.

The record does not show as to the manner in which the records were changed in the office of the county clerk, if at all, or whether or not an inspection of the record at the time the alleged compromise agreement was entered into would have shown a change such as to inform defendant thereof had he made such inspection. We cannot say as a matter of law that defendant was guilty of such neglect in failing to ascertain that no mistake had been made in compiling the abstract, if such be the fact, as would prevent him from setting up mutual mistake in the compromise settlement, if such settlement was in fact made.

The second proposition is that defendant should have been permitted to introduce evi-

dence designed to show that plaintiffs were fully informed by the Taylors of the correct terms of the lease before they purchased the land, and that they did not rely upon the abstract, and therefore had no just basis for their claim for damages.

An agreement of compromise is invalid and subject to impeachment if procured by fraud or by false and fraudulent representations. 12 C. J. 348.

If plaintiffs, in fact, knew that the lease ran for ten instead of five years, they could not have relied upon, and were not deceived by the abstract, and therefore could have no valid claim against defendant upon which to base the alleged compromise settlement.

In Duck v. Antle, 5 Okla. 152, 47 P. 1056, the court in effect held that where a party asserting a claim which he knows is groundless and without cause, and which was being pressed for the sole purpose of extorting money from another, the claim could be no consideration for a contract of compromise and settlement. Therein the court quotes with approval from McKinley v. Watkins, 13 Ill. 140, the following:

"If the plaintiff was threatening to sue on a claim which he knew was wholly unfounded, and which he was setting up as a mere pretense to extort money from the defendant, a contract founded on a promise not to sue in such a case would be utterly void. In order to support the promise there must be such a claim as to lay a reasonable ground for the defendant's making the promise and then it is immaterial on which side the right may ultimately prove to be."

And from Long v. Towl, 42 Mo. 545.:

"Dismissal of suits palpably unjust forms no adequate consideration for a promise.*** To make the settlement of assumed rights a sufficient consideration for a promise, there must be at least an appearance of right sufficient to raise a possible doubt in favor of the party asserting the claim."

When plaintiffs had introduced evidence tending to prove that the true consideration for the notes was the compromise and settlement and forbearance to sue upon the claim for damages, defendant should have been permitted to introduce evidence tending to show that plaintiffs knew they had no just claim for such damages.

The evidence offered by defendant and rejected by the court as to the condition of the record at the time the abstract was made, and as to what the Taylors had told plaintiffs concerning the length of the term of

the lease before the purchase of the land, should have been admitted.

The judgment is reversed, and the cause is remanded for a new trial.

McNEILL, C. J., OSBORN, V. C. J., and CORN and GIBSON, JJ., concur.